**NOT FOR PUBLICATION**

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SHAWN SMITH,** | **Civil Action No. 2:13-cv-72 (JLL) (JAD)** |
| **Plaintiff,** | **OPINION AND ORDER** |
| **v.** | |
| **JAMES C. DEZAO, et al,** | |
| **Defendants.** | |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court by way of Defendants' request to re-open and/or repeat the discovery taken in the underlying action, <u>Smith, et al. v. Resort Condominiums Internationals Inc., et al.</u>, Case No. 2:07-cv-00437,[1] on the issue of Andrew Smith's alleged alcohol consumption on the night of his tragic death. (<u>See</u> ECF Nos. 27-30, and 35). Upon careful consideration of the parties' submissions, and for the reasons stated below, Defendants' request is **GRANTED**.

### I.    BACKGROUND

This action involves Defendants' alleged legal malpractice in the underlying case, <u>Smith et al. v. Resort Condominiums Internationals, Inc., et al.</u>, Case No. 2:07-cv-00437. (Complaint, ECF No. 1, ¶¶ 1, 38-39). Defendants, James C. Dezao, Esquire, Law Offices of James C. Dezao, P.A. f/k/a Dezao & Dibrigida, LLC, and John/Jane Doe(s), (hereinafter collectively referred to as "Defendants"), represented Nancy Smith and Harold Smith, husband and wife, the plaintiffs in the

---

[1] Unless otherwise noted, the citations in this Order refer to the present matter, Case No. 2:13-cv-72.

underlying action. (Id. at 6, ¶ 32). In that case, Nancy and Harold Smith brought a negligence action against multiple defendants as a result of their son, Andrew Smith's, tragic death during their family vacation in Cancun, Mexico. (Id.). Defendants allegedly failed to timely file a Complaint on behalf of the Plaintiff in the present case, Shawn Smith, Nancy and Harold Smith's other son, for negligent infliction of emotional distress after having "observed through sight and sound the serious physical injury and eventual death of his younger brother, Andrew." (Id. at 8 ¶ ¶ 41-43).

The Smith family booked a weeklong vacation set to begin on June 17, 2006 to Cancun, Mexico. (Id. at 4, ¶ 12). In October of 2005 a hurricane caused massive destruction to many resorts, including Hotel Y Villas Solaris (hereinafter "Solaris"), the resort the Smith family was to stay in a few months later. (Id. at 4, ¶ ¶ 11-12). Although the Smith family was advised that Solaris was "fully functional and all repairs from a recent hurricane were completed," they arrived only to discovery much of the hotel under construction and "the elevator(s) were not working; one the hotel's [sic] two elevators was subsequently placed into service, while the other elevator continued to be out-or service, [sic] with the open elevator shaft barricaded by three large pieces of plywood." (Id. at 4, ¶ ¶ 13, 15).

On June 21, 2006, Andrew Smith "pushed the elevator call button to summons [sic] the working elevator on the fourth floor and then stood adjacent to a plywood barrier covering the elevator shaft of the adjacent non-functioning broken elevator." (Id. at 5, ¶ 20). Andrew leaned against the plywood barrier, which gave way, and fell down the elevator shaft. (Id. at 5, ¶ 21). He subsequently died from the injuries he sustained in the fall. (Id. at 6, ¶ 31). Prior to Andrew's death, Plaintiff observed his brother in the elevator shaft and audibly heard his brother cry out for help. (Id. at 5, ¶ ¶ 22-23). Plaintiff had continuous contact with his brother until an ambulance

arrived, transporting Andrew to the nearest hospital where he was rushed into surgery. (Id. at 5-6, ¶¶ 24-30).  Unfortunately, he died in surgery that same day. (Id. at 6, ¶ 31).

On July 5, 2006, Nancy Smith executed a contingency fee agreement with Defendants to represent the Smith family and the Estate of Andrew Robert Smith, as a result of the June 21, 2006 incident. (Id. at 6, ¶ 32).  Plaintiff alleges that during their initial meetings, Nancy and Harold Smith informed Defendants that they "observed the serious physical injury and eventual death of their son Andrew . . . and suffered severe emotion distress as a result." (Id. at 6, ¶ 33).  Plaintiff also alleges that during their initial meetings, Nancy and Harold Smith further informed Defendants that Plaintiff "observed through sight and sound the serious physical injury and eventual death of his younger brother, Andrew . . . and suffered severe emotional distress as a result thereof." (Id. at 6-7, ¶ 34).

Plaintiff further alleges that Defendants informed Nancy Smith that Defendants would legally represent her, her husband Harold, and their son Shawn. (Id. at 7, ¶ 35).  On January 26, 2007, Defendants filed a Complaint in this Court on behalf of Nancy and Harold Smith against multiple defendants. (Id. at 7, ¶¶ 38-39).  Defendants, however, did not file a Complaint on behalf of Plaintiff Shawn Smith for negligent infliction of emotional distress.  (Id. at 8, ¶ 42).  On September 17, 2010, Defendants filed a motion on behalf of Shawn Smith, Nancy Smith, and Harold Smith for leave to file a Second Amended Complaint to add Shawn Smith as a plaintiff in the underlying action and to include an additional claim for negligent infliction of emotion distress on behalf of Nancy and Harold Smith, individually. (Id. at 9, ¶ 48). Then Magistrate Judge Esther Salas, granted plaintiffs' motion in part and denied in part. (Transcript of Proceedings held on 10/28/10, ECF No. 114 in Civil Action No. 2:07-cv-00437).  The motion was granted as to allow plaintiffs to file a claim for negligent infliction of emotional distress, but denied as to adding

3

Shawn Smith as a plaintiff on futility grounds. (Id. at 6). Judge Salas reasoned that the two year statute of limitations had run and plaintiffs failed to articulate any reason why the statute of limitations should not be applied to the date of the accident in 2006. (Id.). Following that ruling Nancy and Harold Smith terminated their relationship with Defendants and retained new representation on December 3, 2010. (Substitution of Attorney, ECF No. 117 in Civil Action No. 2:07-cv-00437).

The underlying case settled in August 2012 and the case was dismissed with prejudice on December 18, 2012. (Stipulation and Order of Dismissal, ECF No. 178 in Civil Action No. 2:07-cv-00437). Plaintiff Shawn Smith commenced this action in this Court on January 2, 2013 for professional negligence, breach of fiduciary duty, and breach of covenant of good faith and fair dealing. (Complaint, ECF No. 1, at 14-17). Plaintiff alleges that as a result of Defendants' malpractice, Plaintiff's claims for injuries sustained as a result of observing through "sight and sound the serious physical injury and eventual death of his younger brother, Andrew, on June 21, 2006 were time barred and he was not allowed to file or recover any of the damages to which he would otherwise have been entitled." (Id. at 13-14, ¶ 66).

On June 17, 2014 this Court presided over a telephone status conference to discuss whether discovery in this legal malpractice action should include the re-opening and/or repeating of discovery taken in the underlying case, specifically on the issue of Andrew Smith's alleged consumption of alcohol on the night of his death.[2] Following that conference, this Court requested that Defendants subpoena the file of Resort Condominiums International ("RCI") in the underlying

---

[2] This issue was previously briefed beginning with a joint submission by the parties outlining their arguments to Magistrate Judge Hammer on February 12, 2014. (ECF No. 20). The case was then reassigned to this Court on March 13, 2014. The Court conducted a telephone status conference on April 23, 2014, after which the parties submitted letters further explaining their positions. (ECF Nos. 23-25).

case in order to ascertain precisely what documentation and/or information RCI, as defendant in the underlying action, possessed regarding Andrew Smith's alleged alcohol consumption.

In a letter dated August 4, 2014, Plaintiff's counsel informed the Court that he received a letter from trial counsel for RCI in the underlying action. (ECF No. 27). In that letter, counsel stated that, "[a]ny documentation in our file relative to 'investigation' of the accident (or consumption of alcohol, if any) would have been produced in discovery or motion practice, which we understand you already have, or would otherwise be privileged."[3] (Id. at 3). As a result, Plaintiff argued that Defendants should not be permitted to re-open the issue of Andrew Smith's consumption of alcohol since that information and/or documentation was produced during discovery in the underlying case. (Id. at 1-2). Plaintiff ultimately requested that Defendants "be bound by the same evidence that would have been presented at [t]rial in the underlying action," (Id. at 1), and that Defendants be prohibited from taking "a second bite of the apple and conduct additional discovery in an effort to establish new facts on liability issues or comparative negligence arguments which were not established in the underlying action." (Id. at 2).

Defendants responded to Plaintiff's letter on August 5, 2014, stating that RCI's subpoena response contained multiple deficiencies, (ECF No. 28), to which Plaintiff responded on August 7, 2014, arguing that RCI's response was both complete and adequate. (ECF No. 29). Plaintiff asserted that he himself is "bound by the same evidence that would have been presented in the underlying action, and the defendant attorney utilizing that same evidence, is entitled to present facts and assert defenses that 'would have been submitted in the underlying action.'" (ECF No.

---

[3] This, of course, is ultimately an inappropriate response to a subpoena. Neither party moved to compel.

29, at 2) (emphasis excluded) (citing <u>Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.</u>, 179 N.J. 343, 358 (2004)).

Defendants promptly responded on the same day, arguing, "[i]t is useless and a waste of time for the parties to argue at this juncture about whether RCI has been fully responsive, and for the Court to decide a crucial evidentiary issue based on the parties' positions as to the as-yet unresolved issues regarding RCI's subpoena response." (ECF No. 30, at 1). Defendants then submitted to the Court a letter on December 12, 2014, and enclosed a copy of the redacted investigative report received from RCI's former counsel in the underlying case. The only portion of the document that remained unredacted was the information relating to Andrew Smith's potential alcohol consumption: "[w]e were told that on the Ambulance [sic] was Mr. Smith with his son, and with a representative of the Hotel; and that during the way to the Hospital, Mr. Smith was saying that he was to blame for the incident, because he had authorized him to drink alcohol in excess and thought that this accidence was a result of that."

Plaintiff responded on December 18, 2014, stating again that Defendants should not be permitted to "conduct additional discovery in an effort to establish new facts on liability issues or comparative negligence arguments which were not established in the underlying action." (ECF No. 38, at 1-2). Plaintiff stressed that his position (1) does not preclude Defendants from exploring facts as they relate to the existence of an attorney-client relationship, thus creating a duty of care; (2) the breach of that duty; and (3) the proximate cause relative to the attorney-client relationship and the alleged breach. (ECF No. 38, at 2) (citing <u>Conklin v. Hannoch Weisman</u>, 145 N.J. 395, 416 (1996)).

## II.     ANALYSIS

Legal-malpractice suits are grounded in the tort of negligence. <u>McGrogan v. Till</u>, 167 N.J. 414, 425 (2001). "The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." <u>Id.</u> (citing <u>Conklin</u>, 145 N.J. at 416).

There are several analytical methods that courts utilize when conducting a legal malpractice case, one of which is a "suit within a suit," which Plaintiff in this case completely relies upon. Plaintiff's argument rests on the New Jersey Supreme Court case, <u>Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.</u>, 179 N.J. 343 (2004), the facts of which are similar in nature to that of this case. In that legal malpractice case, the plaintiff was injured in a multi-vehicle automobile accident. <u>Id.</u> at 347. The accident involved plaintiff's car, and multiple vehicles driven by Carol Ertel, Emily Forman, Karen Marut, and Charlotte Ignall. <u>Id.</u> Plaintiff retained counsel, who filed a complaint for negligence against all the drivers except Ertel. <u>Id.</u> After a conflict of interest was discovered with plaintiff's counsel, the matter was referred to another attorney, who was then retained by plaintiff. <u>Id.</u> Plaintiff's counsel then moved to amend the complaint to include a claim against Ertel. <u>Id.</u> Although plaintiff was successful in amending the complaint, Ertel successfully moved for summary judgment based on the applicable statute of limitations. <u>Id.</u> The plaintiff settled her case for $87,000, but later brought a legal malpractice claim against the attorneys she initially retained alleging that their negligence in failing to name Ertel as a defendant in the initial matter "caused her to settle her case for less than its true value." <u>Id.</u>

Following the jury selection in the legal malpractice trial, the trial court was presented with motions *in limine* from both parties. <u>Id.</u> Plaintiff argued that she should be entitled to proffer

7

expert testimony regarding the settlement in addition to direct evidence regarding her case. Id. Defendants on the other hand, argued that the case should be tried solely as a "suit within a suit." Id. The trial court granted plaintiff's motion, which the defendant appealed following a verdict in plaintiff's favor for $92,460.00. Id. at 348, 356. The Appellate Division reversed, explaining that "there was no sound basis to depart from the 'suit within a suit' format." Id. at 356. The Supreme Court of New Jersey reversed the Appellate Division and held that "the traditional 'suit within a suit' format is not the only way to proceed in a legal malpractice action." Id. at 346. The case was remanded for further proceedings consistent with the court's opinion. Id. at 363.

The "suit within a suit" method of proving harm that results from malpractice is the most common method, "in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." Id. at 358. The approach aims to clarify what would have taken place, but for the attorney's malpractice. Id. (citing Gautam v. De Luca, 215 N.J. Super. 388, 397 (App. Div. 1987)). The "suit within a suit" method, however, has been subjected to much criticism, which Plaintiff in this case ignores. The method in some situations "cannot accurately reconstruct the underlying action" and the method has "also drawn fire for being unfair to plaintiffs who must litigate the underlying claim against the lawyer who originally prepared it." Garcia, 119 N.J. at 359. "Often, parties must cope with the disadvantage of not having the same access to evidence or of having evidence grow stale with the passage of time . . . Evidentiary concerns loom large for underlying suits that never reach trial." Id. (internal citation omitted). Most importantly for this case, the "suit within a suit" approach raises major concerns for any underlying cases that do not go to trial, but rather are resolved by means of a settlement. See id.

> First, the rule wholly ignores the possibility of settlement. The simple fact is that many, if not most, legal claims are not tried to conclusion, but rather are amicably adjusted. Second, it is often difficult for the parties to present an accurate evidential

reflection or semblance of the original action.  Finally, the passage of time itself can be a significant factor militating against the "suit within a suit" approach.

Id. at 358 (quoting Gautam, 215 N.J. Super. at 395).  The Supreme Court of New Jersey in Garcia further clarified that a legal malpractice case "may proceed in any number of ways depending on the issues.  Included among those options are a 'suit within a suit,' any 'reasonable modification thereof,' and a suit based on 'expert testimony.'"  Id. (citing Lieberman v. Employers Insurance of Wausau, 84 N.J. 325, 343-44 (1980)).  Furthermore, the scheme that courts apply is discretionary, and is entitled to deference.  Garcia, 179 N.J. at 346.

We now turn to the precise question in this application – does the "suit within a suit" method preclude further discovery in this malpractice action?  First, this Court notes that Garcia was not about the taking of additional discovery.  In fact, it would appear that the parties in Garcia engaged in further discovery, at least expert discovery, because the *in limine* motions argued after jury instruction included expert testimony regarding the settlement, which can only be presumed to have been the subject of pre-trial discovery.

This issue of Andrew Smith's alleged drinking was in fact raised during interviews and depositions in the underlying case.  (See ECF Nos. 20, 23-25).  Here, Defendants are not chasing an elusive theory regarding Andrew Smith's alleged alcohol consumption.  Specifically, in the parties' joint submission, Plaintiff states in his position statement that the issues of "whether any of the family members and/or witnesses were intoxicated at the time of the accidence . . . were fully explored and considered in the underlying action."[4]  (Joint Submission, ECF No. 20, at 3).  Defendants also note in their position statement that after Nancy and Harold Smith terminated their

---

[4] Of course, the question explicitly raised by Plaintiff's statement is whether such issues were fully explored.  In fact, as set forth below, the Defendants in this action, Plaintiff's family's prior counsel, did explore these issues and allegedly withheld the fruits of his efforts from everyone.  It is also clear that defendants in the underlying action explored the issues.  Because there was no trial, however, it is far from clear that the issue was fully explored.

relationship with Defendants, the discovery continued and included, "questioning of numerous witnesses related to Andrew Smith's ingestion of alcohol on the date of his accident, a topic relevant to the issue whether Andrew Smith was contributorily negligent, which could have barred or reduced the Estate's recovery." (Id. at 4).

The search for such evidence in the underlying case proved to be fruitful. Both parties reference notes taken by Waseem Naik, an agent of Mr. DeZao, during an interview of Raymond Arndt. (See ECF Nos. 23-25). Although the parties disagree as to what the notes reveal, Plaintiff states that Mr. Naik's notes read as follows: "Andrew Smith had 3 or 4 and a mixed drink." (ECF No. 24, at 2) (internal citation omitted). Plaintiff goes on to state that "Mr. Naik recently testified at his deposition . . . that he had no knowledge concerning what type of beverage this comment was referencing when he wrote the note. Mr. Naik further declared that he still has no knowledge concerning what type of beverage Andrew Smith drank and could not even confirm that Andrew was drinking alcohol." (Id.) (internal citation omitted).

On the other hand, Defendants argue that Mr. Naik's notes reveal that, "(1) Andrew Smith had consumed three or four shots, and a mixed drink; (2) indicate that Ray Arndt told Andrew not to drink beer, which Andrew then dropped to a balcony below; and (3) contain the phrase 'he was drunk' right before referencing the amount of alcohol consumed by Arndt and Andrew Smith." (ECF No. 23, at 2). Regardless of what Mr. Naik's notes actually say, it is clear that there is evidence that suggests Andrew Smith consumed alcohol on the night of his accident.[5]

This evidence should be discovered in the present litigation. The issue was not fully explored because there was no trial in the underlying case. As Defendants state, although some

---

[5] This Court is not making a finding on this issue; rather, the question is whether the subject is fair game for discovery.

discovery was conducted, "the issue of Andrew Smith's consumption of alcohol was not fully explored in discovery below, and additionally that more facts regarding that issue very likely could have arisen at trial." (ECF No. 23, at 1).  The presence of a settlement in the underlying case should not prevent Defendants from conducting discovery now.  As Defendants correctly note, "the present dispute is not about what might ultimately be admissible in a trial, but, rather, about what is discoverable." (ECF No. 25, at 1).  Furthermore, the fact that Plaintiff here may ultimately convince the Court to preclude this evidence from being produced at trial does not necessitate Defendants' inability to access that evidence during the discovery phase of this case.

Plaintiff stresses that, "despite being in possession of these notes and/or video, DeZao **never produced** these notes and/or video to the defendant in the underlying action (i.e. RCI), **never identified** Waseem Naik as a potential witness in the underlying action, and **never produced** these notes and/or video to [Plaintiff's counsel] with the Smith file after his representation of the Smith family was terminated." (ECF No. 24, at 2) (emphasis in original). What is ironic about Plaintiff's current position is that at the time of the underlying trial, Mr. DeZao's failure to produce evidence of Andrew Smith's alleged alcohol consumption was in fact advantageous to the Smith family.  It would be patently unfair to allow Plaintiff to bar Defendants from using evidence of Andrew Smith's alleged alcohol consumption in this legal malpractice action. Mr. DeZao's alleged non-production is not the subject of this malpractice action. Although Plaintiff attempts to persuade the Court that the parties should be "bound by the same evidence that would have been presented in the underlying action," (ECF No. 38, at 2), that is simply impossible because no evidence was presented in the underlying case.  Because no trial was conducted, it is impossible to know what would have been presented.

11

Furthermore, this Court does not read <u>Garcia</u> as preventing litigants from seeking discovery in a malpractice case, whether or not it is to be tried as a "suit within a suit."[6]   While Plaintiff maintains that the "discovery surrounding the issues of liability and comparative negligence in the underlying action should be limited to that evidence which 'would have been submitted' at trial had no malpractice occurred," essentially, "what would have taken place, but for defendant DeZao's malpractice," (ECF No. 38, at 2), the Court disagrees in this instance. To achieve a fair trial, unfettered discovery within the bounds of Federal Rule of Civil Procedure 26 should proceed.

"The doctrine of comparative negligence is an affirmative defense that a defendant can assert to reduce liability." <u>Tose v. Greate Bay Hotel & Casino Inc.</u>, 819 F. Supp. 1312, 1314 (D.N.J. 1993). Under New Jersey law, "any damages attributable to a defendant's negligence 'shall be diminished by the percentage sustained of negligence attributable to the person recovering,' so long as the plaintiff's negligence was not greater than the defendant's." <u>Id.</u> (citing N.J.S.A. § 2A:15–5.1). In order to potentially reduce their damages, Defendants in this case seek to conduct discovery on Andrew Smith's alleged alcohol consumption. It is important to note that the discovery that Defendants seek is known to Plaintiff. This issue was explored in the underlying matter, at least by Mr. DeZao, who represented the family before the parting of the ways. (<u>See</u> ECF Nos. 23-25). There is evidence in the record that Plaintiff was with his brother in the hours preceding the accident. (Complaint, ECF No. 1, at 5-6, ¶ ¶ 23-30). There is also evidence of Andrew Smith's alcohol consumption. (<u>See</u> ECF Nos. 23-25). Furthermore, it is far from clear that the defendants in the underlying matter failed to raise this issue.

---

[6] Indeed, this Court is not issuing a ruling today that should be interpreted as governing how this case should be tried. The "suit within a suit" framework is herein analyzed in connection with the discovery dispute presented by the parties.

Moreover, Andrew Smith's potential comparative negligence is directly related to Plaintiff's emotional distress claim in this action.  In <u>Portee v. Jaffee</u>, the seminal case in New Jersey on a bystander's emotional distress claim, the Supreme Court of New Jersey considered the effect of the injured party's own negligence on a plaintiff's right to recover in a case based on negligent infliction of emotional distress.  84 N.J. 88 (1980).  In that case, a mother was able to recover damages for negligent infliction of emotional distress after watching her seven year old son die when he became trapped in an elevator, even though she was physically unharmed.  <u>Id.</u> The Supreme Court applied the comparative negligence statute to a bystander liability case and concluded that "[t]o allow a plaintiff seeking damages for emotional injuries to recover a greater proportion than the injured party would surely create liability in excess of the defendant's fault. We therefore hold that any recovery for emotional harm resulting from perceiving the death or serious injury to another shall be reduced by the proportion of the injured party's negligence, as well as, of course, any contributing negligence of the plaintiff himself."  <u>Id.</u> at 102.  Given this long standing precedent in New Jersey, and given that "[c]omparative negligence contemplates the inclusion of all relevant factors in arriving at appropriate damages awards," <u>Nunez v. Schneider Nat'l Carriers</u>, 217 F. Supp. 2d 562, 569 (D.N.J. 2002) (internal citation omitted), Defendants shall be permitted to conduct discovery regarding Andrew Smith's alleged alcohol consumption.  This discovery is not only a relevant factor, but necessary to the just outcome of this case given the comparative negligence defense.

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought

> need not be admissible at the trial if the information sought appears reasonably
> calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). According to Rule 26, non-privileged, relevant matters are discoverable.

To allow Plaintiff to block discovery that is both relevant to Defendants' defense and, therefore,

Plaintiff's damages, flies in the face of established jurisprudence. See Fed. R. Civ. P. 26(b)(1); see

also Hickman v. Taylor, 329 U.S. 495, 507-508 (1947) ("Mutual knowledge of all the relevant

facts gathered by both parties is essential to proper litigation. To that end, either party may compel

the other to disgorge whatever facts he has in his possession     . . . [b]ut discovery, like all matters

of procedure, has ultimate and necessary boundaries . . . as Rule 26(b) provides, further limitations

come into existence when the inquiry touches upon the irrelevant or encroaches upon the

recognized domains of privilege"); see also Caver v. City of Trenton, 192 F.R.D. 154, 159

(D.N.J.2000) (Courts have interpreted Federal Rule of Civil Procedure 26 liberally, "creating a

broad range for discovery which would 'encompass any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case' ") (citing

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)); see also Caver, 192 F.R.D. at 159

("The parties must be allowed to examine all relevant evidence so that each will have a fair

opportunity to present an effective case at trial").

      What Plaintiff essentially seeks to do here is hamstring Defendants by the alleged failure

of the underlying defendant to conduct the discovery that Defendants here now seek.[7]

Furthermore, it is impossible to know what evidence on the issue of Andrew Smith's comparative

negligence would have been introduced, let alone established at the underlying trial. As a result,

---

[7] It is far from clear that the discovery Defendants seek is not contained in RCI's file because we
have yet to see the file in its entirety.

this Court shall permit Defendants to take discovery regarding Andrew Smith's alleged alcohol consumption on the night of his accident.

### III.   **CONCLUSION**

For the foregoing reasons, Defendants request to conduct discovery on the issue of Andrew Smith's alleged consumption of alcohol is **GRANTED**.  The parties shall submit a joint scheduling Order by January 29, 2015, that provides time for this discovery.

The Court is mindful of the intense emotional issues that Plaintiff and his family may confront as a result of the discovery that is to take place pursuant to this Opinion.  Accordingly, the Court Orders the parties to meet and confer and determine how to proceed with discovery. Should the parties disagree as to how to proceed in light of the emotional toll on the Smith family, the parties may submit letters to the Court outlining their disputes.

**SO ORDERED**

_____
**JOSEPH A. DICKSON, U.S.M.J.**

cc:   Hon. Jose L. Linares, U.S.D.J.

15